2009 Ark. 297

The ARKANSAS DEPARTMENT OF ENVIRONMENTAL QUALITY, Appellant,

v.

OIL PRODUCERS OF ARKANSAS, Betsy Production Company, Inc., Jerry Langley Oil Company, LLC, Shuler Drilling Company, Inc., Mike A. Davis, James Langley, Gary Sewell, and Robert Reynolds, Appellees.

No. 08–890.

Supreme Court of Arkansas.

May 21, 2009.

Dustin McDaniel, Att'y Gen., by: Charles Moulton, Sr., Ass't Att'y Gen., and Kendra Akin Jones, Ass't Att'y Gen., for appellant.

Perkins & Trotter, PLLC, by: G. Alan Perkins and John F. Peiserich; Little Rock, and Shackleford, Phillips & Ratcliff, P.A., by: Brian H. Ratcliff, El Dorado, for appellees.

ROBERT L. BROWN, Justice.

The appellant, the Arkansas Department of Environmental Quality ("ADEQ"), appeals from an order of the Union County Circuit Court denying the ADEQ's motion to dismiss on grounds of sovereign immunity.

On December 27, 2007, appellees Oil Producers of Arkansas; Betsy Production Company, Inc.; Jerry Langley Oil Company, LLC; Shuler Drilling Co., Inc.; Mike A. Davis; James Langley; Robert Reynolds; and Gary Sewell (collectively "OPA"), filed a complaint against the ADEQ, seeking declaratory and injunctive relief which stemmed from the ADEQ's issuance of two general permits for the construction of pits at drilling sites and for the disposal of wastes from drilling activities: "Authorization to Construct, Operate and Close the Pits Associated with Oil and Gas Well Exploration" (Permit No. 00000–WG–P) ("Pit Permit"), and "Authorization to Land Apply Drilling Fluids Under the Provisions of the Arkansas Water and Air Pollution Control Act (Act 472 of 1949, as amended, A.C.A. § 8–4–101 et seq.) and A.C.A. § 8–1–201 et seq." (Permit No. 00000–WG–LA) ("Land Application Permit").

According to OPA's complaint, the permits contained numerous regulatory provisions affecting oil and gas production that purport to apply to all industry parties statewide and which subject noncomplying parties to civil and criminal penalties. OPA's complaint set forth the following grounds as reasons for its requested declaratory and injunctive relief: (1) the ADEQ lacked jurisdiction to regulate in the area of oil and gas law because the Oil and Gas Commission is vested with exclusive jurisdiction and authority to regulate oil and gas drilling and production operations in Arkansas; (2) the ADEQ permits were an unlawful attempt to promulgate administrative rules because the ADEQ lacked statutory rulemaking authority and failed to comply with proper rulemaking procedures; and (3) the permits violated statutory requirements for creating permits, conflicted with an existing regulation of the Arkansas Pollution Control & Ecology Commission, and required unlawfully established permit fees.

The ADEQ moved to dismiss OPA's complaint and asserted (1) that it was immune from suit under article 5, section 20 of the Arkansas Constitution; (2) that OPA had failed to exhaust its administrative remedies under Arkansas Pollution Control and Ecology Commission Regulation No. 8; and (3) that venue was improper in Union County. OPA responded and also moved to stay enforcement of the ADEQ permits.

The circuit judge held a hearing on the ADEQ's motion to dismiss and OPA's

motion for stay, following which the circuit judge took both motions under advisement. On April 22, 2008, while the motions were still under advisement, OPA filed an amended complaint that differed from the original complaint only in that it sought to establish OPA as the representative of a class of parties allegedly affected by the pending permits. The ADEQ moved to dismiss the amended complaint on May 7, 2008, and asserted in that motion that OPA had failed to plead sufficient facts to support standing to challenge the ADEQ permits in addition to the grounds asserted in its previous motion to dismiss. In two orders dated May 16, 2008, the circuit judge denied the ADEQ's motions to dismiss and OPA's motion for stay. The ADEQ now brings this interlocutory appeal pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(10) solely with respect to the denial of its motion to dismiss on sovereign-immunity grounds.[1]

The ADEQ asserts on appeal that, as a state agency, it is immune from suit under article 5, section 20 of the Arkansas Constitution, which provides: "The State of Arkansas shall never be made defendant in any of her courts." The ADEQ continues that this constitutional provision is violated because OPA's suit for declaratory and injunctive relief seeks to control the action of the State and because a court order finding that OPA has "suffered significant injury" and a "reduction in the value" of its leases "could open the door to further litigation" that could impact the state coffers.

OPA responds that it does not dispute that the ADEQ, as a state agency, is generally entitled to sovereign immunity but asserts that it pled sufficient facts in its amended complaint to meet two recognized exceptions to the sovereign-immunity doctrine. The first exception relied on by OPA is that equity has jurisdiction to enjoin or restrain state officials or agencies from acts which are ultra vires, arbitrary, capricious, or in bad faith. As to the second exception, OPA asserts it pled sufficient facts to show that the General Assembly waived the ADEQ's immunity by its enactment of the Arkansas Administrative Procedure Act.

The ADEQ counters that it acted within its express statutory and regulatory authority in issuing the permits. The ADEQ admits that it lacks statutory authority to regulate drilling and production of oil and gas but claims that the permits at issue were "not an attempt to regulate the drilling for, or production of, oil and natural gas." Rather, it asserts that the permits were "environmental permits," which it had express statutory authority to issue under Arkansas Code Annotated section 8–1–202. The ADEQ further asserts that it is not subject to the Administrative Procedure Act, as this court recognized in *Ark. Dep't of Envtl. Quality v. Al–Madhoun,* 374 Ark. 28, 285 S.W.3d 654 (2008).

In reviewing the circuit judge's decision on a motion to dismiss, this court has said:

> [W]e treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. How-

---

1. Ark. R.App. P.-Civ. 2(a)(10) provides for the interlocutory appeal of an order denying a motion to dismiss or for summary judgment based on the defense of sovereign immunity. The rationale for this rule is that the right to immunity from suit is effectively lost if the case is permitted to go to trial. *Simons v. Marshall,* 369 Ark. 447, 255 S.W.3d 838 (2007); *State v. Goss,* 344 Ark. 523, 42 S.W.3d 440 (2001).

ever, our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief.

*Ark. Tech Univ. v. Link,* 341 Ark. 495, 501, 17 S.W.3d 809, 812 (2000) (internal citations omitted). Our standard of review for the denial of a motion to dismiss is whether the circuit judge abused his or her discretion. *See S. Coll. of Naturopathy v. State ex rel. Beebe,* 360 Ark. 543, 203 S.W.3d 111 (2005).

■ We first address OPA's contention that the General Assembly waived ADEQ's sovereign immunity pursuant to section 25–15–214 of the Arkansas Administrative Procedure Act. OPA relies on section 25–15–214, which provides:

> In any case of rule making or adjudication, if an agency shall unlawfully, unreasonably, or capriciously fail, refuse, or delay to act, any person who considers himself or herself injured in his or her person, business, or property by the failure, refusal, or delay may bring suit in the circuit court of any county in which he or she resides or does business, or in Pulaski County Circuit Court, for an order commanding the agency to act.

Ark.Code Ann. § 25–15–214 (2007). This court has held that section 25–15–214 authorizes a circuit court to order an agency that fails to act to do so, when that failure injures a person or that person's property and when the agency has acted unlawfully, unreasonably, or capriciously. *See Oliver v. Pulaski County Circuit Court,* 340 Ark. 681, 13 S.W.3d 156 (2000). Last year, this court held that the Arkansas Administrative Procedure Act, and specifically section 25–15–214, did not apply to the ADEQ because the ADEQ is required to follow the specific administrative procedures set forth in the Arkansas Pollution Control and Ecology Commission's Regulation No.

8. *Ark. Dep't of Envtl. Quality v. Al–Madhoun,* 374 Ark. 28, 285 S.W.3d 654 (2008). Accordingly, the ADEQ's right to sovereign immunity was not waived by virtue of the General Assembly's enactment of the Arkansas Administrative Procedure Act, and OPA's reliance on this alleged exception is without merit.

■■ We turn then to the second alleged exception to sovereign immunity that OPA raises, and that is that the ADEQ acted ultra vires in issuing the permits. This court has long recognized that a state agency may be enjoined if it can be shown that the agency's pending action is ultra vires or outside the authority of the agency. *Ark. Game & Fish Comm'n v. Eubank,* 256 Ark. 930, 512 S.W.2d 540 (1974) (finding that the Game and Fish Commission's proposed fish-kill was within its constitutional authority); *see also Grine v. Bd. of Trustees,* 338 Ark. 791, 2 S.W.3d 54 (1999) (recognizing exception but finding that instructor's complaint failed to allege any specific acts that were ultra vires, in bad faith, or arbitrary with respect to university's refusal to extend time to complete doctoral requirements); *Villines v. Lee,* 321 Ark. 405, 902 S.W.2d 233 (1995) (recognizing exception but finding no allegations of ultra vires acts); *Cammack v. Chalmers,* 284 Ark. 161, 680 S.W.2d 689 (1984) (finding that the circuit court had jurisdiction to enjoin the University of Arkansas Board of Trustees for the failure to follow charitable trust guidelines under ultra vires exception to sovereign immunity); *Toan v. Falbo,* 268 Ark. 337, 595 S.W.2d 936 (1980) (circuit courts without jurisdiction to enjoin state agencies and commissions absent allegations of ultra vires actions); *Harkey v. Matthews,* 243 Ark. 775, 422 S.W.2d 410 (1967) (recognizing ultra vires exception to sovereign immunity). A state agency may also be enjoined from acting arbitrarily, capriciously, in bad

faith, or in a wantonly injurious manner. *Ark. Game & Fish Comm'n v. Eubank, supra.*

For its ultra vires claim, OPA asserts that because the Pit Permit and the Land Application Permit contained numerous regulatory provisions affecting oil and gas production, the ADEQ's issuance of the permits was ultra vires. This, according to OPA, is due to the fact that (1) the ADEQ lacked jurisdiction to regulate oil and gas drilling and production operations because the Oil and Gas Commission has exclusive statutory jurisdiction in that area; (2) the ADEQ lacked statutory rulemaking authority; and (3) the ADEQ violated the statutory requirements for creating permits.

In support of these claims, OPA made the following allegations in its amended complaint:

13. On November 30, 2007, ADEQ issued two so-called "general permits" regarding oil and gas exploration and production operations, entitled: "Authorization to Construct, Operate, and Close the Pits Associated with Oil and Gas Well Exploration" (Permit No. 00000–WG–P; hereafter the "Pit Permit"), and "Authorization to Land Apply Drilling Fluids Under the Provisions of the Arkansas Water and Air Pollution Control Act (Act 472 of 1949, as amended, A.C.A. § 8–4–101, et seq.), and A.C.A. § 8–1–201, et seq." (Permit No. 00000–WG–LA; hereafter the "Land Application Permit"), collectively referred to herein as the "Permits." Both Permits have a declared effective date of January 1, 2008. Copies of the Pit Permit and the Land Application Permit were attached to the Complaint as Exhibits A and B, respectively.

14. The Permits were signed by Steven L. Drown, Chief, Water Division, ADEQ, as the designated agency official on behalf of the ADEQ Director. As such, issuance of the Permits was a final decision of the Director and ADEQ.

15. Both the Pit Permit and the Land Application Permit are called "general permits"; i.e., they were issued generally for mandatory use by an entire class of industry participants and were not issued to individual permit applicants. The Pit Permit purports to apply to all "operators or pits associated with oil and gas exploration, drilling, completion, production and re-completion, located within the State of Arkansas." Pit Permit cover page (Exhibit A). The Land Application Permit purports to apply to all "Oil and Gas Well Operators, and others." Land Application Permit cover page (Exhibit B).

16. The Permits contain numerous regulatory provisions that purport to be "requirements" pursuant to the Permits. The terms of the Permits contain rule provisions that purport to apply to all industry parties statewide and to require all such parties to obtain coverage under the Permits.

17. The Permits require that each party applying for coverage under one of the Permits must submit an application fee of $300.00 per application for Pit Permits and $500.00 per application for Land Application Permits.

18. The Pit Permit states: "After the effective date of this permit, any operator constructing a pit, during drilling, completion, production, re-completion, workover, or similar activity at an oil or gas well shall obtain a permit to construct a pit." Pit Permit, Page 4 of Part I, para. 3 (Exhibit A). The Permit purports to require compliance with all provisions thereof and states that any noncompliance would constitute a violation of the Arkansas Water and Air Pollution Control Act and subject the noncompli-

ant party to civil and criminal penalties. Pit Permit, Page 5 of Part II, paras. 2–3 (Exhibit A). The Land Application Permit contains similar provisions. Land Application Permit, Page 2–3 of Part II, paras. 2–3 (Exhibit B).

19. The ADEQ failed and refused to provide any proof that the technical requirements or standards in the proposed Permits are based upon generally accepted scientific knowledge and engineering practices. Furthermore, the ADEQ did not provide any justification with appropriate reference to the scientific and engineering literature or written studies conducted by the department, in support of the Permit requirements and limitations.

20. The provisions and requirements of the Permits are not set forth in any statute or in any rule or regulation promulgated by the Arkansas Pollution Control & Ecology Commission.

OPA, in addition, attached the permits as exhibits to its complaint. The Pit Permit provides requirements for, among other things, the construction of reserve pits; the maintenance of circulation pits and mud pits; drilling fluid disposal; pit closure; test pits, workover pits, and emergency pits; and oil-based drilling mud and other mud systems. For example, Part II, section A.1 provides:

Reserve Pits shall be constructed with a minimum of 2:1 (two feet horizontal to one foot vertical) side slope on both the interior and exterior walls. The top of the pit walls must be a minimum of 2 feet wide. All reserve pits must be constructed to include the two (2) feet freeboard requirements stated in Part II.B.2 of this permit.

The Land Application Permit similarly provides requirements for the land application of water-based drilling fluids such as: "Drilling fluids shall not be applied to slopes with a gradient greater than 15%; or to soils that are saturated, frozen or covered with snow, and during rain or when precipitation is imminent." Both permits also include reporting and record keeping requirements, permit fees or permit application fees, and provisions providing for penalties in the event of noncompliance.

The ADEQ admits that it lacks statutory authority to regulate the drilling and production of oil and gas but argues that the general permits were "not an attempt to regulate the drilling for, or production of, oil and natural gas." It contends, rather, that Arkansas Code Annotated section 8–1–202(b)(2)(A)(i) provides that the duties of the director of the ADEQ shall include: "The administration of permitting, licensing, certification, and grants programs deemed necessary to protect the environmental integrity of the state." Ark.Code Ann. § 8–1–202(b)(2)(A)(i) (Repl.2007). The ADEQ concludes that it is entitled to sovereign immunity because the permits fall within the scope of its authority to protect the environmental integrity of the state.

We hold that OPA has asserted a claim in its complaint with the attached permits as exhibits that the ADEQ acted outside of its regulatory and statutory authority in issuing permits, which allegedly include unauthorized rules and regulations. Whether OPA will prevail on this claim remains to be seen. In any case, it is clear to this court that the issue of ADEQ's legal authority to act as it did needs further development before the circuit court. It is unclear from the record and arguments before us (1) whether the permits contained rules and regulations that the ADEQ was authorized to promulgate or whether section 8–1–202(b)(2)(A)(i) merely authorizes the agency to "administer" rules adopted by the Arkansas Pollution

Control and Ecology Commission; (2) whether the permits purport to regulate oil and gas production—which impinges on the authority of the Oil and Gas Commission—rather than general environmental issues; and (3) whether the ADEQ failed to comply with statutory requirements for issuing such permits. These are issues that, no doubt, will be more fully developed at the trial level with, as was mentioned at the oral argument of this matter, joinder of the Oil and Gas Commission and the Arkansas Pollution Control and Ecology Commission as necessary parties.

We hold that the circuit judge did not abuse his discretion in denying the motion to dismiss.

₁₂Affirmed.

Special Justices RAYMOND R. ABRAMSON and KELLEY W. WEBB, join.

IMBER and WILLS, JJ., not participating.