2013 Ark. 232

**ARKANSAS LOTTERY COMMISSION, Bishop Woosley, Director, Appellant**

v.

**ALPHA MARKETING, Appellee.**

**No. CV–12–510.**

Supreme Court of Arkansas.

May 30, 2013.

Dustin McDaniel, Att'y Gen., by: David A. Curran, Ass't Att'y Gen., for appellants.

Davidson Law Firm, by: Molly Lucas, for appellee.

JOSEPHINE LINKER HART, Justice.

Appellee, Alpha Marketing ("Alpha"), brought this cause of action in the Pulaski County Circuit Court against appellant, Arkansas Lottery Commission ("the Commission"), seeking, in its second amended complaint, declaratory relief that Alpha's registered trademarks of "Arkansas Lottery," "Arkansas Lotto," and "Lottery Arkansas" are valid and that it holds exclusive rights to use them; injunctive relief enjoining the Commission's alleged acts of trademark infringement; and monetary damages in the form of lost profits stemming from the alleged trademark infringement. Alpha also asserted that the alleged acts of trademark infringement constitute an illegal taking of private property in derogation of the Arkansas Constitution, entitling it to an injunction until the Commission deposits adequate funds with the circuit court to compensate Alpha for its damages.

The Commission brings this second interlocutory appeal from the circuit court's denial of the Commission's motion to dismiss Alpha's lawsuit on the basis that the Commission has sovereign immunity, the first having been dismissed without prejudice for lack of a specific ruling on the issue of sovereign immunity. *Ark. Lottery Comm'n v. Alpha Mktg.*, 2012 Ark. 23, 386 S.W.3d 400. In this appeal, the Commission asserts that Alpha failed to plead facts sufficient to state a claim under the recognized exceptions to sovereign immunity. We reverse the circuit court's order and dismiss the lawsuit.

A discussion of the pleadings filed in this case is necessary for its disposition. Alpha filed a complaint for declaratory judgment against the Commission. In its complaint, Alpha described its business as a sole proprietorship based in Arkansas that is engaged in "advertising, promotion, and sales of goods via radio, internet, and print media throughout the state of Arkansas." It further asserted that it began using "Arkansas Lottery" and "Arkansas Lotto" in its business activities in 1994, registering both as trademarks with the Secretary of State in 2007, and that it registered "Lottery Arkansas" in 2009, claiming use of the mark since 2007.

According to the complaint, Alpha received a cease-and-desist letter from then Senior Assistant Attorney General Bradford Phelps in 2009 "threatening legal action against Alpha Marketing if it did not immediately cease all marketing efforts" using the trademarks. A series of exchanges between the Attorney General's Office and Alpha's owner, Mr. Ed Dozier, then ensued, in which Mr. Dozier sought to resolve the matter and maintain his company's rights to the marks. After hiring the Davidson law firm, it also contacted the Attorney General's Office on Alpha's behalf seeking a statement of intent as to the threat of litigation. Mr. Phelps replied that his office would take "no further action 'at this time,'" and referred the issue to the Commission. Alpha asserted that its certificates of trademark registration entitled it to exclusive use of the trademarks; that the Commission and the Arkansas Attorney General's Office challenged its rights to exclusive use; and that litigation would likely ensue if the court did not make a declaration regarding ownership and usage of the rights in the trademarks.

The Commission filed its answer in which it generally denied the allegations. Furthermore, it asserted under the heading "Affirmative Defenses" that Alpha "is legally ineligible" to use the trademarks because registration of the marks "is contrary to law, and the registrations should be canceled." The Commission requested that the court deny Alpha relief and "enter a declaratory judgment canceling Alpha

Marketing's registration of the trademarks ... and for all other just and proper relief."

Alpha filed an amended complaint in which it repleaded the factual allegations and its request for declaratory judgment. Alpha also added a claim for trademark infringement alleging that the Commission continually marketed its goods and services under the names "My Arkansas Lottery" and "Arkansas Scholarship Lottery," during which time Alpha held its registered trademarks. Its claim for trademark infringement asserted that the Commission had used, without the consent of Alpha, colorable imitations of the marks registered by Alpha in connection with the sale, distribution, offering for sale, and advertising of the Commission's goods and services; that such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services; and that the Commission has colorably imitated the marks registered by Alpha and applied the colorable imitations to signs, prints, and advertisements intended to be used on or in connection with the sale of other distribution in this state of its goods or services. Alpha requested that the court enjoin the Commission from using the marks and award it lost-profit damages caused by such wrongful use.

The Commission filed a motion to dismiss the amended complaint and a supporting brief. In its motion, it asserted in part that the Arkansas Constitution entitled it to sovereign immunity from the trademark-infringement claims, as Alpha sought both monetary damages and injunctive relief. The circuit court issued an order in which it denied the Commission's motion to dismiss the amended complaint. The Commission then filed its answer to the amended complaint. In its answer, the Commission stated that it was "entitled to sovereign immunity under [a]rticle V, [s]ection 20, of the Arkansas Constitution and that the Court therefore lacks jurisdiction over this action."

The Commission made its first interlocutory appeal of the circuit court's denial of the motion to dismiss the amended complaint. On review of the interlocutory appeal from the circuit court's denial of the motion to dismiss, this court concluded that the Commission had failed to obtain an express ruling on the sovereign-immunity issue. Thus, this court held that an appeal based on that issue had to be dismissed, but it dismissed without prejudice "so that the Commission may return to circuit court to obtain a ruling for this court to review on an interlocutory basis." *Ark. Lottery Comm'n v. Alpha Mktg.*, 2012 Ark. 23, at 9, 386 S.W.3d 400, 405.

Based on this court's holding, the Commission then sought, and the circuit court subsequently issued, a supplemental order expressly denying the Commission's motion to dismiss on the grounds of sovereign immunity. At that juncture, Alpha filed a second amended complaint specifically incorporating its previous allegations. It further asserted that the Commission "repeatedly took and damaged [Alpha's] intellectual property with each act of infringement and is continuing to do so with each act of infringement." Additionally, it argued that the Commission acted in bad faith and in an ultra vires manner because it "failed to follow [the] proper statutory procedure setforth in [Arkansas Code Annotated section] 4–71–209(3)(c) and (4) to invalidate the trademarks referenced in the original and amended complaint, and rather, [the Commission] acted in bad faith and in [an] ultra vires manner by simply sending a cease[-]and[-]desist letter by and through the Attorney General's office." With respect to the takings claim, Alpha requested an injunction until the Commission first deposited an amount

sufficient to cover its damages with the court and declaratory relief regarding the validity of and the exclusive right to use the trademarks, as well as any other just and proper relief.

Again, the Commission filed a motion to dismiss, this time the second amended complaint, arguing in part that the "second amended complaint should be dismissed in its entirety because ... the Commission was entitled to sovereign immunity." It also filed an answer to the second amended complaint again asserting sovereign immunity. Subsequently, the court filed an order denying the motion to dismiss. In the order denying the motion to dismiss the second amended complaint, the court denied the motion because it determined that Alpha had pled sufficient facts for certain exceptions to sovereign immunity—ultra vires acts, an unconstitutional taking, and waiver of the doctrine by the Commission's request for affirmative relief of its original answer. The court further stated, "Though the Court did not make any specific ruling on any of the substantive claims, the Court finds that [Alpha] pled sufficient facts for each exception to sovereign immunity to withstand a Motion to Dismiss." The Commission appealed.

■ The Commission and Alpha have put forth differing appellate standards of review. The Commission asserts that the issue of whether a party is immune from suit is a question of law and is reviewed de novo, but Alpha contends that the appropriate standard of review is an abuse of discretion. Given that the circuit court made no substantive interpretations of law but instead made its decision by looking at Alpha's pleadings and finding that Alpha "pled sufficient facts for each exception to sovereign immunity," we apply the abuse-of-discretion standard of review. *Ark. Dep't of Envtl. Quality v. Oil Producers of Ark.*, 2009 Ark. 297, at 5, 318

S.W.3d 570, 572–73. On reviewing the denial of the motion to dismiss on sovereign immunity grounds, we look to the pleadings, treating the facts alleged in the complaint as true and viewing them in the light most favorable to the party who filed the complaint. *Travelers Cas. & Sur. Co. of Am. v. Ark. State Highway Comm'n*, 353 Ark. 721, 726, 120 S.W.3d 50, 52 (2003)

■ The defense of sovereign immunity originates from the Arkansas Constitution, which provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." Ark. Const. art. V, § 20. The Commission's sovereign immunity is expressly reserved in Arkansas Code Annotated section 23–115–208(a) (Supp.2011). Because a judgment for Alpha would operate to control the action of the State or subject it to liability, the suit is one against the State and is barred by the doctrine of sovereign immunity. *Ark. Tech Univ. v. Link*, 341 Ark. 495, 502, 17 S.W.3d 809, 813 (2000). For instance, a judgment for Alpha declaring its trademarks valid and its exclusive right to use them would, in effect, determine how the Commission advertises and markets the state lottery, as would its claim for injunctive relief related to alleged acts of trademark infringement. Further, a judgment for Alpha on its declaratory-relief claim would require the Commission to file suit seeking to cancel the trademarks, thus forcing the Commission to surrender its sovereign immunity. *Travelers Cas. & Sur. Co.*, 353 Ark. at 728–29, 120 S.W.3d at 54. Thus, the lawsuit is barred by the defense of sovereign immunity.

■ Additionally, a judgment for Alpha on its trademark-infringement claim, in which it seeks lost-profit damages, or on its takings claim in which it seeks an injunction until the Commission deposits adequate funds with the court to compensate for damages, would implicate the

state's treasury and subject it to liability. Alpha's claim for lost-profit damages stemming from alleged acts of trademark infringement is barred by sovereign immunity because none of the exceptions apply to permit a damages claim to proceed against the sovereign state. There is an exception to sovereign immunity for unconstitutional acts, but the scope of the exception is limited to actions for injunctions. *Ark. Tech Univ.*, 341 Ark. at 507, 17 S.W.3d at 816. The exception does not apply to suits seeking money damages. *Id.*, 17 S.W.3d at 816. In addition, the exception for ultra vires, arbitrary, capricious or bad-faith acts extends only to injunctive relief; this court has never recognized the exception to allow a claim for damages to proceed. *See Ark. Dep't of Envtl. Quality*, 2009 Ark. 297 at 6–7, 318 S.W.3d at 573–74. Because these exceptions do not apply to a claim seeking monetary damages, and because the Commission did not waive its sovereign immunity, this claim is barred.

Because each of Alpha's claims is barred by sovereign immunity, we must determine whether Alpha pled facts sufficient to establish that one of the recognized exceptions to sovereign immunity applies. If not, its claims are barred by the doctrine of sovereign immunity.

■ Alpha asserts that the Commission waived the defense of sovereign immunity. Alpha's waiver argument is predicated on the proposition that the Commission waived sovereign immunity by seeking affirmative relief. The Commission could not raise the defense of sovereign immunity if it has been a moving party seeking specific relief. *See LandsnPulaski, LLC v. Ark. Dep't of Corr.*, 372 Ark. 40, 43, 269 S.W.3d 793, 796 (2007). Alpha primarily focuses on the paragraph in the Commission's answer to the original complaint in which,

under the heading, "Affirmative Defenses," it stated as follows:

Pleading affirmatively, Plaintiff is legally ineligible to use "Arkansas Lottery," "Lottery Arkansas," and "Arkansas Lotto," as trademarks. Plaintiff's registration of these trademarks is contrary to law, and the registrations should be canceled.

WHEREFORE, Defendant Arkansas Lottery Commission requests that this Court deny Plaintiff any relief and enter a declaratory judgment canceling Alpha Marketing's registrations of the trademarks "Arkansas Lottery," "Lottery Arkansas," and "Arkansas Lotto" and for all other just and proper relief.

The Commission argues that there was no waiver because it dropped the request for declaratory judgment in its answer to the amended complaint, and, similarly, its answer to the second amended complaint did not contain a request for affirmative relief. It posits that these subsequent pleadings supersede and replace its original answer. By analogy, it cites to *Edward J. DeBartolo Corp. v. Cartwright*, 323 Ark. 573, 577, 916 S.W.2d 114, 116–17 (1996), in which the court observed that "an amended complaint, unless it adopts and incorporates the original complaint, supersedes the original complaint."

In response, Alpha contends that the Commission's subsequent amended answer incorporated by reference a request for affirmative relief. Alpha points to paragraph 34 of the Commission's amended answer, where it stated that Alpha was legally ineligible to use the trademarks, that the registration of the trademarks was contrary to the law, and that "the registrations should be cancelled." In paragraph 35 of the Commission's answer to the amended complaint, the Commission stated that it "incorporates by reference all defenses and arguments raised in its

motion to dismiss the amended complaint ... and its brief in support of its motion to dismiss." In its brief, the Commission asserted that "[b]ecause the plaintiffs trademarks are deceptively misdescriptive and are likely to deceive consumers, the plaintiff's trademarks are invalid and should be cancelled."

We hold that the Commission's answer to the second amended complaint, however, superseded and replaced its two prior answers. While the Commission's answer to the second amended complaint incorporated certain responses it made in its amended answer, it did not incorporate a request for cancellation of the trademarks. This pleading instead superseded all prior answers and established that the Commission relied on and pleaded the doctrine of sovereign immunity. Clearly, in the Commission's answer to the second amended complaint, the Commission raised the defense of sovereign immunity and did not seek affirmative relief.[1]

Alpha claims an exception to sovereign immunity under the Arkansas Administrative Procedure Act (APA). The APA is a limited exception to the State's immunity arising under article V, section 20 of the Arkansas Constitution. *Ark. Dep't of Envtl. Quality v. Al–Madhoun,* 374 Ark. 28, 33, 285 S.W.3d 654, 659 (2008). Specifically, the APA provides:

> In any case of rule making or adjudication, if an agency shall unlawfully, unreasonably, or capriciously fail, refuse,

or delay to act, any person who considers himself or herself injured in his or her person, business, or property by the failure, refusal, or delay may bring suit in the circuit court of any county in which he or she resides or does business, or in Pulaski County Circuit Court, for an order commanding the agency to act.

Ark.Code Ann. § 25–15–214 (Repl.2002). Thus, the APA authorizes the Pulaski County Circuit Court to command agencies failing or refusing to act to the injury of any person or their property to do so where the agency acts unlawfully, unreasonably, or capriciously.

Alpha asserts that the APA orders the Commission to answer for its ultra vires use of power in a court of equity, and that Alpha exercised the only form of relief it had by bringing suit in the Pulaski County Circuit Court. Alpha seems to argue that the APA entitled it to bring its claims in the circuit court because the Commission, through the Attorney General's Office, failed to act or unreasonably delayed providing Alpha with its "final position" on whether it would bring suit under the Arkansas Deceptive Trade Practices Act (ADTPA) after sending the cease-and-desist letter.

Alpha failed to plead facts sufficient to establish this exception to the sovereign-immunity doctrine for two reasons. First, this matter is not one concerning "rule making" or an "adjudication," to which the

---

1. Though not argued by the parties, we are mindful that Rule 12(h)(1) of the Arkansas Rules of Civil Procedure provides that "[a] defense of lack of jurisdiction over the person, improper venue, insufficiency of service of process, or pendency of another action between the same parties arising out of the same transaction or occurrence is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in the original responsive pleading." Sovereign immunity is an affirmative defense that must be specifically asserted in a responsive pleading under Rule 8(c), but because it is not a defense listed in Rule 12(h)(1), it may be raised in an amended answer under Rule 15(a). *See Seth v. St. Edward Mercy Med. Ctr.,* 375 Ark. 413, 419–20, 291 S.W.3d 179, 184 (2009) (holding that waiver of the defense of charitable immunity did not result from failure to plead it in the original answer).

APA exception applies. "Adjudication" is defined as an "agency process for the formulation of an order." Ark.Code Ann. § 25–15–202(*l*)(A) (Supp.2011). An "order" means "the final disposition of an agency in any matter other than rule making, including licensing and rate making, in which the agency is required by law to make its determination after notice and hearing." Ark.Code Ann. § 25–15–202(5). Finally, "rule making" is defined as the "agency process for the formulation, amendment, or repeal of a rule." Ark. Code Ann. § 25–15–202(9). Given these definitions, and the express language of the APA limiting its application to cases of rule making and adjudication by an agency, this exception does not apply to this case.

Second, even if Alpha's factual allegations regarding the Commission's delay or failure to act after sending the cease-and-desist letter are true, the APA does not entitle it to seek the relief it has sought. The express language of the APA only authorizes the Pulaski County Circuit Court to issue an order commanding the agency to act. Alpha did not seek an order from the Pulaski County Circuit Court commanding the Commission to act; instead, it sought declaratory, injunctive, and monetary relief. Nowhere did it assert that it was seeking an order commanding the Commission to act. In any event, the Attorney General's Office did act; it sent a letter declaring its intent not to pursue the ADTPA claim and referring the matter to the Commission. Alpha acknowledges this fact in its pleadings. For these reasons, the APA as a limited exception to the Commission's sovereign immunity is inapplicable to the case at bar.

■ Alpha's arguments that the Commission committed an ultra vires act center on the Attorney General's sending a cease-and-desist letter predicated on violations of the ADTPA, requiring it to take down its website and arrest its advertising activities or face suit. Alpha argues that the Commission was authorized to hold and enforce its trademarks, and as such, it should have brought suit to cancel the trademarks under Arkansas Code Annotated section 4–71–209(3)(c),(4) (Repl.2011) as opposed to sending the cease-and-desist letter, which it contends amounted to a threat to take Alpha's property. Interspersed with this argument is that sending the letter amounted to an arbitrary, capricious, and bad-faith act.

■ A state agency may be enjoined if it can be shown that the agency's pending action is ultra vires or outside the authority of the agency. *Ark. Dep't of Envtl. Quality*, 2009 Ark. 297, at 6, 318 S.W.3d at 573. Furthermore, a state agency may also be enjoined from acting arbitrarily, capriciously, in bad faith, or in a wantonly injurious manner. *Id.* at 6–7, 318 S.W.3d at 573–74. Alpha failed to plead facts to demonstrate that the Commission acted outside the scope of its authority or that it acted in an arbitrary, capricious manner or in bad faith. Alpha does not assert anywhere in its pleadings that the Commission solicited the Attorney General's Office to send the letter; nor does the letter mention the Commission. If the Attorney General's Office acted of its own volition, which the letter indicates and Alpha does not contest, it is unclear how the letter can be construed as an ultra vires, arbitrary, capricious, or bad-faith act by the Commission.

■ Even assuming that the letter had been sent by the Commission through the Attorney General's Office, it was predicated on Alpha's alleged violations of the ADTPA; nowhere did the letter refer to Alpha's trademarks or the desire to cancel them. Alpha did not plead that the Commission, by and through the Attorney Gen-

eral's Office, did not have authority to send the cease-and-desist letter predicated on a violation of the ADTPA. As the Commission correctly argues, the Attorney General's Office is expressly authorized by statute to enforce the ₁₃ADTPA pursuant to Arkansas Code Annotated §§ 4–88–104, 4–88–105(d)(6) (Repl.2011). Nowhere did Alpha plead or contest that the Attorney General's Office did not have authority to act on alleged violations of the ADTPA or that it did not have a good-faith belief that violations of the ADTPA had occurred. Instead, Alpha asserts that the letter was a veiled attempt to cancel its trademarks and the proper procedure for doing so is to bring suit to cancel the trademarks. There is no requirement that the Attorney General's Office pursue a lawsuit to cancel trademarks when alleged advertising activities are also potentially deceptive in violation of the ADTPA. The Attorney General's Office could pursue a remedy under the ADTPA, which it is expressly authorized to enforce, for Alpha's allegedly deceptive conduct. Moreover, if the statutory scheme compelled the Commission to bring suit to cancel the trademarks, it would, in effect, compel the Commission to waive its sovereign immunity. Thus, Alpha has not stated facts sufficient to show that any act on the part of the Commission was ultra vires, made in bad faith, or was arbitrary or capricious.

■ In so far as Alpha seemingly pleaded a claim for an unconstitutional taking predicated on the Attorney General's Office sending a cease-and-desist letter, which Alpha characterizes as a "threat to take its private property," it failed to plead sufficient facts to establish the applicability of this exception. First, the pleadings demonstrate that, after sending the cease-and-desist letter, the Attorney General's Office subsequently informed Alpha that it did not intend to pursue the matter.

Thus, even assuming that the letter did constitute a threat to take Alpha's property and that such a threat gave rise to an unconstitutional takings claim, neither the Commission nor the Attorney General's Office acted on the threat; in fact, the ₁₄undisputed facts demonstrate that the Attorney General's Office effectively retracted the alleged threat to take Alpha's property.

Alpha pleads that ongoing acts of trademark infringement by the Commission constitute an unconstitutional taking of its property. In support of this assertion, Alpha argues that infringement on a trademark is analogous to a taking, that it has established a vested property right in its trademarks, and that each time the Commission infringes on its trademarks, there is a continuous taking.

We decline to address in this case whether a trademark infringement committed by a state entity can give rise to a cognizable takings claim under the Arkansas Constitution. Instead we are guided by *Austin v. Arkansas State Highway Commission*, 320 Ark. 292, 895 S.W.2d 941 (1995), where we affirmed the dismissal of the plaintiffs' action against the Highway Commission, which erected a barrier, effectively blocking access to their land. In dismissing the case, the court relied on the principle that a "landowner, claiming a taking of property, may seek either prospective injunctive relief in chancery court or damages from the State Claims Commission." *Id.* at 296, 895 S.W.2d at 943. Alpha's continuous-takings argument is tantamount to a finding that once the Highway Commission erected the barrier blocking the Austins' access to their land, they continued to suffer damages each day their access was denied, thereby entitling them to injunctive relief. Because Alpha argues that the cease-and-desist letter constituted the "taking," and thus the taking

had already occurred prior to its having filed the first complaint, its claim for injunctive relief is barred by the defense of sovereign immunity.

In conclusion, we hold that the Commission is an entity of the State entitled to the defense of sovereign immunity. Further, Alpha's claims for injunctive, monetary, and declaratory relief would operate to control the actions of the State and are therefore barred by the defense of sovereign immunity. Also, the exception for waiver does not apply; the exception for ultra vires, arbitrary, capricious, or bad-faith acts does not apply; the limited exception found in the Arkansas Administrative Procedure Act does not apply; and the takings exception does not apply.

Reversed and dismissed.

Special Justice J. SHEPHERD RUSSELL, III, joins and concurs.

CORBIN, DANIELSON, and GOODSON, JJ., dissent.

HOOFMAN, J., not participating.

J. SHEPHERD RUSSELL, III, Special Justice, concurring.

While I join the majority, I write separately to respond to the dissents. I am not convinced that the Commission's original answer to Alpha Marketing's initial complaint constituted a waiver. The doctrine of sovereign immunity is rigid and may only be waived in limited circumstances, one of which is when the State is the moving party seeking specific relief. *Short v. Westark Cmty. College*, 347 Ark. 497, 504, 65 S.W.3d 440, 445 (2002) (citing *State Office of Child Support Enforcem't v. Mitchell*, 330 Ark. 338, 954 S.W.2d 907 (1997)). To hold that the Commission became a moving party seeking specific relief is contrary to this court's case law. The court has not heretofore found credence in

an argument for waiver of sovereign immunity when the facts did not unquestionably demonstrate that the State was the moving party. *See Arkansas Game & Fish Comm'n v. Lindsey*, 299 Ark. 249, 251, 771 S.W.2d 769, 770 (1989) (finding that the Commission could not avail itself of the defense of sovereign immunity after filing an answer, a compulsory counterclaim, and a third-party complaint); *Parker v. Moore*, 222 Ark. 811, 812, 262 S.W.2d 891, 892 (1953) (finding that the Game & Fish Commission could not avail itself of the defense of sovereign immunity because it filed its own action to quiet title, thus becoming akin to a private suitor in state court); *see also Arkansas Dep't of Human Servs. v. State*, 312 Ark. 481, 488, 850 S.W.2d 847, 851 (1993) (finding that DHS did not waive its sovereign immunity and stating "in none of the proceedings now before us was DHS the initial moving party"). Unlike *Lindsey* and *Parker*, here, the Commission did not assert a counterclaim, did not file a third-party complaint, and did not file its own action. Rather, it maintained a "purely defensive posture," *see LandsnPulaski, LLC v. Arkansas Dep't of Corr.*, 372 Ark. 40, 43–44, 269 S.W.3d 793, 796–97 (2007), requesting that the court find against Alpha Marketing and in its favor. To so narrowly construe the language of the Commission's affirmative defense overlooks an important policy goal of the sovereign-immunity doctrine—namely, to prevent the State from using sovereign immunity as both a sword and a shield in the same action. Here, the policy rationale does not buttress the finding that the Commission's answer amounted to a waiver. The Commission only raised sovereign immunity as a defense to Alpha Marketing's claims; it never became the moving party such that it should be forced to litigate the declaratory-judgment action contrary to the constitutional proscription.

Furthermore, it is of no consequence that the Commission filed its answer to the second amended complaint subsequent to the hearing in which the circuit court orally denied its motion to dismiss the second amended complaint. The record reveals that the Commission's answer to the second amended complaint was filed prior to the entry of the circuit court's order denying the motion to dismiss. The written order from the circuit court, rather than the hearing, is the operative procedural fact pertinent to the resolution of this issue. Furthermore, the court prefaced its findings by stating that it had reviewed "the pleadings, responses, replies, supporting briefs, and arguments of counsel." This language necessarily leads to the conclusion that the circuit court considered the Commission's answer to the second amended complaint and that it considered and ruled on the issue of waiver, which both parties argued at the hearing and which Alpha Marketing asserted in its amended response to the Commission's motion to dismiss the second amended complaint.

Finally, sovereign immunity is jurisdictional immunity from suit, *see Arkansas Dep't of Envtl. Quality v. Al–Madhoun,* 374 Ark. 28, 32, 285 S.W.3d 654, 658 (2008), and it can be pleaded at any time.[1] *See Seth v. St. Edward Mercy Med. Ctr.,* 375 Ark. 413, 291 S.W.3d 179 (2009) (noting that the doctrine of charitable immunity provides charitable organizations with immunity both from liability and from suit

and that the defense of charitable immunity was not waived by failure to plead it in the original answer).

PAUL E. DANIELSON, Justice, dissenting.

I respectfully, but most vigorously, dissent. To simply say that the majority has erred in its reversal on the issue of the Commission's waiver of sovereign immunity is but an understatement, as the record and this court's case law make it abundantly clear that the Commission indeed waived sovereign immunity.

First and foremost, I must point out that the majority errantly reverses the circuit court's waiver ruling on an argument that was neither raised to, nor ruled on by, the circuit court. The majority holds that the Commission's answer to the second amended complaint superseded and replaced its prior two answers; however, a review of the record reveals that the argument was not raised by the Commission to the circuit court, nor was it ruled on by the circuit court. But even more perplexing is the fact that the majority bases its reversal on the Commission's answer to the second amended complaint, an answer that was filed *after* the hearing at which the circuit court orally denied the Commission's motion to dismiss, finding that the Commission had already waived sovereign immunity.[1] Such timing would likely explain the Commission's failure to raise the argument to the circuit court.

---

1. Pursuant to Arkansas Rule of Civil Procedure 12(h), certain defenses must be raised in the original responsive pleading or by motion. Because sovereign immunity, like charitable immunity, is not listed among the defenses in Arkansas Rule of Civil Procedure 12(h), it is not waived if not asserted in the original answer.

1. As demonstrated by the record, the hearing at which the circuit court issued its ruling

was held on May 15, 2012; the Commission did not file its answer to the second amended complaint until after that hearing, on May 29, 2012. I find it exceptionally generous of, and certainly bad precedent for, the majority to allow the Commission to meritoriously remedy its prior waiver by filing a new pleading after having the benefit of the circuit court's ruling.

There is too the fact that our case law makes clear that the majority's reversal is in error. This court has held that sovereign immunity is jurisdictional immunity from suit. *See Milberg, Weiss, Bershad, Hynes, & Lerach, LLP v. State*, 342 Ark. 303, 28 S.W.3d 842 (2000). The defense arises from article 5, § 20, of the Arkansas Constitution, which provides that "[t]he State of Arkansas shall never be made a defendant in any of her courts." *Id.* at 320, 28 S.W.3d at 854 (quoting Ark. Const. art. 5, § 20). We have extended the doctrine of sovereign immunity to include state agencies. *See Arkansas Dep't of Cmty. Con. v. City of Pine Bluff*, 2013 Ark. 36, 425 S.W.3d 731. Where the pleadings show that the action is, in effect, one against the State, the circuit court acquires no jurisdiction. *See id.* In determining whether the doctrine of sovereign immunity applies, the court must decide if a judgment for the plaintiff will operate to control the action of the State or subject it to liability. *See id.* If so, the suit is one against the State and is barred by the doctrine of sovereign immunity, unless an exception to sovereign immunity applies. *See id.* This court has recognized three ways in which a claim of sovereign immunity may be surmounted: (1) where the State is the moving party seeking specific relief, (2) where an act of the legislature has created a specific waiver of sovereign immunity, and (3) where the state agency is acting illegally or if a state-agency officer refuses to do a purely ministerial action required by statute. *See id.* At issue here is whether the first exception to sovereign immunity applies.

Alpha Marketing claimed, and the circuit court found, that the Commission waived its immunity when it subjected itself to the circuit court's jurisdiction by seeking affirmative relief. The only exception to total and complete sovereign immunity that we have recognized occurs when the State is the moving party seeking specific relief. *See LandsnPulaski, LLC v. Arkansas Dep't of Corrections*, 372 Ark. 40, 269 S.W.3d 793 (2007). In that instance, this court has held that the State is prohibited from raising the defense of sovereign immunity as a defense to a counterclaim or offset. *See id.*

In *LandsnPulaski*, the appellant urged that the Arkansas Department of Correction ("ADC") had not merely filed an answer, but had sought affirmative relief from the circuit court when it requested "all other appropriate relief." 372 Ark. at 44, 269 S.W.3d at 796. This court noted that the ADC had clearly asserted the defense of sovereign immunity in its answer and disagreed that "all other appropriate relief" was specific:

> LandsnPulaski argues that the phrase "all other appropriate relief" is a request for affirmative relief that waived the ADC's sovereign immunity. However, in order to waive sovereign immunity, the request for relief must be specific. *See Fireman's Ins. [Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771 (1990)]. Because "all other appropriate relief" is not a request for specific relief, we hold that the ADC did not waive its sovereign immunity and is therefore immune from suit.

*Id.*, 269 S.W.3d at 796–97.

The apposite question, then, appears to be: did the Commission make a request for specific relief? Like the circuit court, I conclude that it did. A review of the Commission's answer reveals that it pled, as an affirmative defense:

> Pleading affirmatively, Plaintiff is legally ineligible to use "Arkansas Lottery," "Lottery Arkansas," and "Arkansas Lotto" as trademarks. Plaintiffs registration of these trademarks is contrary to

law, and the registrations should be canceled.

WHEREFORE, Defendant Arkansas Lottery Commission requests that this Court deny Plaintiff any relief and enter a declaratory judgment canceling Alpha Marketing's registration of the trademarks "Arkansas Lottery," "Lottery Arkansas," and "Arkansas Lotto" and for all other just and proper relief.

When considering whether the State has sought specific relief, this court has drawn a distinction between the simple filing of an answer, asserting sovereign immunity and praying for "all other appropriate relief," and the filing of an answer, a compulsory counterclaim, and a third-party complaint, concluding that the latter filing operated as a request for affirmative relief. *See LandsnPulaski, supra; see also Travelers Cas. & Sur. Co. v. Arkansas State Highway Comm'n*, 353 Ark. 721, 120 S.W.3d 50 (2003); *Arkansas Game & Fish Comm'n v. Lindsey*, 299 Ark. 249, 771 S.W.2d 769 (1989); *Arkansas Game & Fish Comm'n v. Lindsey*, 292 Ark. 314, 730 S.W.2d 474 (1987).

As set forth above, the Commission specifically asserted in its original answer that Alpha Marketing's trademarks were contrary to law, and it specifically requested that the trademarks' registrations be canceled and that a declaratory judgment be entered to that effect. In its motion to dismiss the amended complaint, the Commission again asserted that Alpha Marketing's complaint for declaratory judgment "should be dismissed because Alpha Mar-

keting's trademark registration was improperly granted and not entitled to trademark protection." [2] Likewise, in its answer to the amended complaint, the Commission stated that it had "taken the position that the plaintiff has no right to exclusive use of the [trademarks]," and further, that "the plaintiff was legally ineligible to use [the trademarks], that the plaintiff's registration of these trademarks is contrary to law, and that the registrations should be cancelled." [3] Finally, the Commission continued to assert the invalidity of the trademarks in both its motion to dismiss the second amended complaint and brief-in-support, as well as in its arguments to the circuit court at the hearing of May 15, 2012.

The Commission's filings in the instant case were quite clearly more than "a purely defensive action." *LandsnPulaski*, 372 Ark. at 44, 269 S.W.3d at 796. Alpha Marketing's original complaint sought solely to have its trademarks declared valid and a declaration that it was entitled to the exclusive use thereof. The Commission, while named as a defendant, was under no obligation to challenge the validity of the trademarks at issue and could have simply invoked its immunity, but it did not. On the contrary, it chose to seek specific relief in its original answer, thereby waiving its immunity. It should be clear to anyone who has actually reviewed the complaints, answers, and motions to dismiss in this case, that the Commission fully intended to litigate the validity of the trademarks at issue. Here, the Commis-

---

**2.** Notably, the Commission's answer to the initial complaint made absolutely no mention of sovereign immunity. Moreover, the Commission's motion to dismiss the amended complaint did not assert sovereign immunity with respect to Alpha Marketing's request for declaratory relief; instead, it did so solely in defense of Alpha Marketing's claim for trademark infringement.

**3.** It was not until the Commission filed its motion to dismiss the second amended complaint that it asserted dismissal of Alpha Marketing's second amended complaint, in its entirety, on the basis of sovereign immunity.

sion answered the complaint, admitted jurisdiction, specifically asserted the trademarks' invalidity, requested a declaratory judgment to that effect, and continued throughout the litigation to argue against the merits of Alpha Marketing's claim of its trademarks' validity. The Commission's requests for relief were not made as alternative requests for relief to a defense of sovereign immunity; they were specific requests for relief in the first instance. Such assertions, as requests for specific and affirmative relief, operated to waive the Commission's entitlement to sovereign immunity.

While the Commission asserts that, even if any waiver had occurred, the scope of that waiver should be strictly limited to Alpha Marketing's request for declaratory relief, that contention was not raised to, or ruled on by, the circuit court. This court has held that it will not consider arguments raised for the first time on appeal; nor will it consider arguments when a party has failed to obtain a ruling from the circuit court. *See Beverly Enters.–Arkansas, Inc. v. Thomas*, 370 Ark. 310, 259 S.W.3d 445 (2007).

Last, but certainly not least, both the majority and the concurring opinion display a fundamental misunderstanding of the doctrine of sovereign immunity and how it can be waived. In equating the doctrines of sovereign immunity and charitable immunity, both |₂₂wholesale adopt and apply, with little to no discussion, this court's analysis in *Seth v. St. Edward Mercy Medical Center*, 375 Ark. 413, 291 S.W.3d 179 (2009). In *Seth*, this court held that the hospital's failure to plead the defense of charitable immunity until its amended answer and motion for summary judgment did not operate to waive its im-

munity defense. This court observed that charitable immunity was an affirmative defense required by Arkansas Rule of Civil Procedure 8 to be specifically asserted in a responsive pleading, and, because it was not a defense listed in Ark. R. Civ. P. 12(h)(1), it could be raised in an amended answer under Ark. R. Civ. P. 15., and not be considered waived.[4]

In direct contrast is the defense of sovereign immunity. The majority and concurring opinion fail to recognize that whether a waiver of sovereign immunity has occurred has absolutely nothing to do with when the defense was pled or if it even was. As already noted, the defense of sovereign immunity is waived, among two other ways, by the State's seeking of specific relief. Once the State has sought that specific relief, the defense of sovereign immunity has been waived, period. It cannot be "unwaived" simply by pleading sovereign immunity in a subsequent pleading! Such a tenet is simply nonsensical and completely upends our well-settled law regarding sovereign immunity.

In its answer to the initial complaint, the Commission challenged the validity of the trademarks at issue and specifically requested a declaratory judgment to that effect—in other words, it quite clearly sought specific and affirmative relief. Whether it subsequently removed |₂₃its specific request for relief from its later pleadings is simply irrelevant. It is because the Commission sought specific relief from the circuit court that the waiver occurred and it was prohibited from employing the defense of sovereign immunity. For that reason, the circuit court did not abuse its discretion in denying the Commission's motion to dismiss on the basis of

---

4. The court qualified this holding by stating that it could be raised in an amended answer, "unless there is a motion to strike the plead-

ing, and the court finds that prejudice results." *Seth*, 375 Ark. at 419, 291 S.W.3d at 184.

waiver, and I would affirm the circuit court's orders.

CORBIN and GOODSON, JJ., join.

COURTNEY HUDSON GOODSON, Justice, dissenting.

I dissent because the circuit court did not err in ruling that the Commission waived the defense of sovereign immunity. In reaching a contrary conclusion, the majority rests its decision on a glaring factual error. Worse, it reverses based on an argument that was neither raised nor ruled upon below. Although I fully join the dissenting opinion authored by Justice Danielson, I write separately to underscore the fallacy of the majority's decision.

Sovereign immunity can be surmounted where the state is the moving party seeking specific relief. *See Weiss v. McLemore,* 371 Ark. 538, 268 S.W.3d 897 (2007). In its answers to the original and first amended complaints, as well as in both motions to dismiss, the Commission consistently maintained that Alpha Marketing's trademarks were invalid, and it persistently sought specific relief for the trademarks to be cancelled. By taking this position, the Commission manifestly indicated that it was ready, willing, and eager to litigate the validity of Alpha Marketing's trademarks with the goal of canceling their registrations. This much is clear. Yet, the majority holds that the Commission's waiver evaporated, as if by magic, because the Commission dropped the request for specific relief in its answer to the second amended complaint. This position is factually untenable because the Commission filed its answer to the second-amended complaint *two weeks after the circuit court ruled that the Commission had waived sovereign immunity.* Thus, this single pleading cannot and did not work to dissolve the waiver that had already occurred. The majority should explain how the belated filing of this answer could effectively overrule the circuit court's previous decision that the Commission had waived immunity. Indeed, the majority opinion hatches a curious, new legal concept of an "after-the-fact unwaiver."

In addition, the Commission did not argue to the circuit court that its answer to the second amended complaint superceded its previous answers and operated as a retraction of its waiver. How could it have made this argument? The answer to the second amended complaint was not even filed at the time the circuit court issued its ruling that a waiver had occurred. The majority thus departs from the settled rule that this court will not reverse a circuit court's decision on the basis of an argument not raised or ruled upon below. *See LaFont v. Mooney Mixon,* 2010 Ark. 450, 374 S.W.3d 668; *Beverly Enters.–Ark., Inc. v. Thomas,* 370 Ark. 310, 259 S.W.3d 445 (2007).

The majority's decision is either based on faulty logic, or the majority is not in full command of the facts and procedural history of this case. Either way, its decision is wrong.

The concurring opinion stands on no firmer ground in its reliance on the fact that the circuit court first issued an oral ruling denying the motion to dismiss and the fact that the answer to the second amended complaint preceded the entry of the circuit court's order memorializing its decision. Of course, an order is not effective until it is entered of record. Ark. R. Civ. P. 58. To suggest, however, that a litigant can overturn a circuit court's ruling on waiver by beating the court in a race to the clerk's office for filing is utterly ridiculous. Moreover, applying this logic would effectively write the law of waiver out of existence if a state agency were allowed to upend a circuit court's ruling

and retract a finding of waiver by the simple expediency of filing a pleading withdrawing its waiver before the court enters its order.[1]

The concurring opinion also errs by taking the position that the circuit court must have considered the second amended complaint based on the boilerplate language contained in the order that all pleadings were reviewed. In the first appeal of this very case, our court rejected the argument that such language constitutes a specific ruling on any given issue. *Ark. Lottery Comm'n v. Alpha Marketing*, 2012 Ark. 23, 386 S.W.3d 400. The fact remains that the Commission did not raise the "unwaiver" issue below, and the circuit court never ruled on this argument.

Finally, the concurring opinion is mistaken that a waiver did not occur. To be sure, the Commission did not file a formal counterclaim or third-party complaint. However, the Commission did seek declaratory relief for the cancellation of the trademarks in its initial answer, and it consistently sought that relief in its subsequent pleadings. Plainly, the Commission moved for specific relief, regardless of the label placed on the pleading. This court has reiterated the rule that pleadings should be liberally construed and that courts should not be blinded by titles but should look to the substance of the pleadings to ascertain what they seek. *See Helena Regional Medical Center v. Wilson*, 362 Ark. 117, 207 S.W.3d 541 (2005); *Jackson v. Mundaca Fin. Servs., Inc.*, 349 Ark. 84, 76 S.W.3d 819 (2002); *Slaton v. Slaton*, 330 Ark. 287, 956 S.W.2d 150 (1997).

I am authorized to state that Justice CORBIN and Justice Danielson join in this opinion.

---

1. It is also worth noting that the Commission responded to the second amended complaint with a motion to dismiss in lieu of filing an answer, as permitted by Rule 12(b) of the Arkansas Rules of Civil Procedure. The Commission filed its answer to the second amended complaint after the circuit court denied the motion to dismiss, as required by Rule 12(b)(2). This explains the timing behind the filing of this answer.