Cite as 2022 Ark. App. 400

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III

**No.** CV-21-417

| | |
|---|---|
| REBECCA NICHOLS<br><br>APPELLANT<br><br>V.<br><br>JAMES SWINDOLL AND CHUCK GIBSON<br><br>APPELLEES | **Opinion Delivered** October 5, 2022<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION<br>[NO. 60CV-21-1321]<br><br>HONORABLE WENDELL GRIFFEN, JUDGE<br><br>DISSENTING OPINION ON GRANT OF PETITION FOR REHEARING |

**BRANDON HARRISON, Chief Judge, dissenting.** I respectfully dissent from the majority opinion and would reverse the circuit court's dismissal of Nichols's amended complaint against her former lawyers. This case should be reviewed by the Arkansas Supreme Court so that it can correct core mistakes that leached into this case and otherwise settle an important, but unsettled, issue touching the practice of law and the law of torts.

I.

Nichols sued her former lawyers for legal malpractice in circuit court when they allegedly failed to properly commence her personal-injury case against some defendants. The failure, which became incurable in January 2018, caused her personal-injury complaint to be dismissed with prejudice three years (and a couple of days) later. When

Nichols sued the lawyers the following month, they moved to dismiss her amended complaint under Ark. R. Civ. P. 12(b)(6), citing the three-year statute of limitations that applies in legal-malpractice cases. Nichols opposed the defense, arguing that she adequately pleaded that the limitations period was tolled by fraudulent concealment—the concealment being her lawyers' failure to disclose that they had stumbled over the "commencement" requirements in Ark. R. Civ. P. 3 & 4 when attempting to begin her personal-injury case. Specifically, Nichols argued that her lawyers realized but never told her that they had failed to timely commence her tort suit against unnamed John Does, parties that were later (untimely) identified and named.

At the Rule 12(b)(6) stage of the case, Nichols's allegations are deemed true. Because her allegations are deemed true, and accounting for the fiduciary relationship between attorneys and their clients—which includes the duty to speak up on material points—the circuit court erred by dismissing Nichols's amended complaint (in the malpractice suit) based on the lawyers' motion to dismiss.

I express no opinion on the merit of the legal-malpractice case. This appeal is not about that. I would only hold, on this record, that the amended complaint should have survived the defendants' motion.

The primary issue here is whether, for Rule 12(b)(6) purposes, an attorney can, by remaining silent, fraudulently conceal an act of legal malpractice from a client by prolonging a lawsuit the lawyer knows cannot succeed until the statute runs under Arkansas's occurrence rule. And if there might be a claim on those facts, can the circuit

2

court dismiss a complaint with prejudice when the client alleges the lawyer acted with that purpose and includes facts from which we might reasonably infer that the client is right?

I also touch on what standard of review on appeal we should apply when judging an order that dismisses the tolling-related allegations in this case's context.

Arkansas is one of few jurisdictions that times the accrual of a legal-malpractice claim to the occurrence of the negligent act. The Arkansas Supreme Court has recognized that the discovery rule might apply instead if the client demonstrates fraudulent concealment. *E.g.*, *Bomar v. Moser*, 369 Ark. 123, 251 S.W.3d 234 (2007). But in *Rice v. Ragsdale*, where the alleged fraudulent concealment was a lawyer's failure to disclose that the client might have a claim against him, this court held that the plaintiffs could not toll the limitations period by alleging that the lawyer had a duty to alert the client to possible legal malpractice. 104 Ark. App. 364, 292 S.W.3d 856 (2009). The majority leans hard on *Rice* here. In my view, *Rice* does not adequately support the majority opinion and should otherwise be reconsidered.

### Rice v. Ragsdale*, the Attorney-Client Relationship, and the Fiduciary's Duty to Speak of Legal Malpractice*

Here is the essential procedural background in *Rice*, where former clients sued attorneys for messing up their medical-malpractice case:

> [Clients] sued [lawyers] for legal malpractice in this action on May 3, 2006, asserting claims for negligence and under Ark. Code Ann. § 16-22-306 (Repl. 1999), which states that, if a lawsuit is dismissed on account of the negligence of an attorney, the attorney shall be liable for all damages his client may have sustained by the dismissal or any other neglect of duty by the attorney. [The lawyers] moved to dismiss on the basis of the three-year statute of limitations, Ark. Code Ann. § 16-56-105 (Repl. 2005). [Clients] filed an amended complaint adding a claim for breach of fiduciary duty and alleging that [the lawyers'] fraudulent concealment had tolled the limitations

period. [The lawyers] then filed motions for judgment on the pleadings on the basis of the statute of limitations.

On November 5, 2007, the circuit court granted the motion for judgment on the pleadings, making the following findings:

4. The Court finds that the claim of negligence asserted in Count I of the complaint is governed by the three-year statute of limitations, which statute ran no later than June 29, 2005, three years after the last day upon which the underlying action could have been timely commenced. The Court therefore finds, based upon the allegations of Plaintiff's First Amended Complaint, that Defendants are entitled as a matter of law to a judgment on the claim of negligence asserted in Count I of Plaintiffs' First Amended Complaint.

. . . .

6. The Court finds that Plaintiffs' cause of action under Ark. Code Ann. § 16-22-306 is governed by the three-year, rather than the five-year, statute of limitations and that the statute of limitations as to Defendants' statutory liability under Ark. Code Ann. § 16-22-306 ran no later than June 29, 2005, three years after the last day the medical malpractice action could have been properly instituted.

. . . .

8. The Court finds that Plaintiffs' claim based upon the allegation of breach of fiduciary duty is governed by the same statute of limitations as that of a claim based upon Defendants' alleged negligence and that the statute of limitations on both claims expired on the 29th day of June, 2005, or three years from the last date on which the underlying medical action could have been commenced.

. . . .

10. *The Court finds that under the facts alleged in Count IV of Plaintiffs' First Amended Complaint, Plaintiffs had an independent duty to investigate the accuracy of Defendants' assurance, and that their failure to do so bars their claim that the three-year statute of limitations was tolled by Defendants' alleged fraudulent concealment.*

11. The Court further finds that on the face of Plaintiffs' First Amended Complaint, all claims against Defendants, arising out of

4

> Defendants' handling of the underlying medical malpractice case, ran on June 29, 2005. Because Plaintiffs' First Amended Complaint was filed herein on May 3, 2006, it is time-barred. Accordingly, Defendants' motion for judgment on the pleadings is granted as to all claims asserted in Plaintiffs' First Amended Complaint and this case should be and hereby is ordered dismissed with prejudice.
>
> Appellants filed a timely appeal on November 28, 2007.

104 Ark. App. at 366–67, 292 S.W.3d at 859–60 (emphasis added).

I emphasized paragraph 10 of the circuit court's order in *Rice* because it is the root of that case's holding and, subsequently, this case's undesirable result. First, I question the circuit court's statement in *Rice* that clients have "an independent duty to investigate the accuracy of" their own lawyers' assurances when those assurances are made during an ongoing attorney-client relationship. *Id.* at 367, 292 S.W.3d at 860. Surely a client is not required to maintain a double layer of lawyers to ensure that the fiduciary responsibilities of the primary lawyer are being honored. (And is a third lawyer needed to ensure the second lawyer properly monitors the first one? And so on. #Matryoshkadoll.)

Here, the circuit court made no such "overwatch" finding, much less did it identify a relevant rule of law supporting *Rice*'s proposition that clients have "an independent duty to investigate the accuracy of" their own lawyers' assurances. *Id.* The majority opinion likewise does not hold that a second lawyer must oversee a primary lawyer before a client may assert fraudulent concealment to oppose a motion to dismiss a legal-malpractice claim because the claim is time-barred. No, this appeal is solely about whether lawyers have a duty to speak about potential (perhaps the bar is set at probable, not possible) malpractice to their clients. And when they do not, may the lawyers use that silence to fuel a Rule 12(b)(6) motion and defeat, at the pleading stage and before discovery, a former client's

5

allegations that the lawyers should have spoken up but did not so that they could benefit from the occurrence rule? The majority's answer falls on the wrong side of fiduciary law, and perhaps soon, history.

As I understand *Rice*, an issue of first impression was presented. Despite the important questions raised in that case, *Rice* provided no analysis to support the holding on a key question that intersected the law of fraud, pleading, and fiduciary relationships. Here is more from *Rice*:

> In their third point, appellants contend that, as their attorneys, appellees had a fiduciary duty to advise them that the statute of limitations was running on any claims they had against appellees after the "fatal flaw in the medical case came to light . . . ." Appellants contend that appellees' failure to do so, when the lack-of-capacity issue was raised in the medical malpractice case on May 10, 2004, amounted to self-dealing. They also argue that appellees' failure to disclose this information was evidence of an intent to conceal, which would toll the statute of limitations. We will address the tolling question in the next point.
>
> A person standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of the duty imposed by the relationship. *See Cherepski v. Walker*, 323 Ark. 43, 913 S.W.2d 761 (1996). There is no dispute that appellees stood in that capacity when representing appellants in the previous lawsuit. *See Allen v. Allison*, 356 Ark. 403, 155 S.W.3d 682 (2004). However, appellants have not cited any authority that supports their position nor have we found any that would expand the scope of an attorney's fiduciary duty to his client in such a way. We therefore affirm on this point.

104 Ark. App. at 372, 292 S.W.3d at 863–64.

We then said that the appellants had not cited any authority on the duty-to-speak issue; nor had this court "found any [authority] that would expand the scope of an attorney's fiduciary duty to his client in such a way." *Id.* at 373, 292 S.W.3d at 864. The more supportable position, even when *Rice* was decided, is that a duty to speak is inherent

to the attorney-client relationship itself, so this court was not really asked to expand anything. We were tasked only to give the fiduciary relationship full force. Simply put: this court overstepped in *Rice*, and a correction is warranted.

A federal district court has recently summarized its view regarding the law on the *Rice* question, though it did not decide the ultimate issue one way or the other because it did not have to in the circumstances:

> It's unclear whether Arkansas law required Cossey to disclose the potential malpractice claim. The Arkansas Supreme Court has not spoken on the point. In a limitations case, the Arkansas Court of Appeals has held that the lawyer had no fiduciary duty to disclose a possible legal error, and did not fraudulently conceal any error by continuing to litigate an issue. *Rice v. Ragsdale*, 104 Ark. App. 364, 372–75, 292 S.W.3d 856, 863–65 (2009). The Restatement says in a comment that the lawyer has a duty to speak in these circumstances. Restatement (Third) of the Law Governing Lawyers § 20 cmt. c (2000 & Supp. 2021). The commentary to the applicable Arkansas ethics rule provides that a lawyer can't withhold information from the client to serve the lawyer's own interests. Ark R. Prof'l Conduct 1.4 cmt. 7. A comprehensive Court of Appeals decision, in similar circumstances, predicted that the Minnesota Supreme Court would hold that a duty to disclose arises only if a disqualifying conflict of interest is presented. *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 628–29 (8th Cir. 2009).

*Bedwell v. Cossey*, No. 2:18-CV-108-DPM, 2021 WL 3827084, at *4 (E.D. Ark. 26 Aug. 2021) (Marshall, C.J.).

Note Chief Judge Marshall's citation to the comment to section 20 in Restatement (Third) of the Law Governing Lawyers. Here is what the comment says in material part, with my emphasis:

> Important events might affect the objectives of the client, such as the assertion or dismissal of claims against or by the client, or they might significantly affect the client-lawyer relationship, for example issues concerning the scope of the representation, the lawyer's change of address, the dissolution of the lawyer's firm, the lawyer's serious illness, or a conflict of interest. *If the lawyer's conduct of the matter gives the client a substantial*

*malpractice claim against the lawyer, the lawyer must disclose that to the client. For example, a lawyer who fails to file suit for a client within the limitations period must so inform the client, pointing out the possibility of a malpractice suit and the resulting conflict of interest that may require the lawyer to withdraw.*

Restatement (Third) of the Law Governing Lawyers § 20 cmt. c (2000).

The majority opinion provides no analysis, no reason, no statement why the Restatement rule is unfair, unjust, unwarranted, or antithetical to fiduciary law in general or the attorney-client relationship specifically. The Restatement rule is none of those things. That rule, instead, does what the majority opinion does not: it recognizes the knowledge imbalance and trust that naturally inheres in the attorney-client relationship.

If knowledge is power, then an attorney is Goliath to the client's David—minus the slingshot and divine plans on human affairs. No client will know every potentially important fact the lawyer learns during litigation. (Indeed, most lawyers would fire clients who demanded to know that much. The horror . . . of the all-too-curious client!) Nor will the typical client have the training and experience required to judge or assess the true significance of events as they unfold, especially in matters of practice and procedure.

Since *Rice* was decided, the American Bar Association has issued a formal ethics opinion that a lawyer's duty to speak includes a duty to disclose material negligent acts or omissions to current clients. A Lawyer's Duty to Inform a Current or Former Client of the Lawyer's Material Error, ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 18-481 (2018). The South Dakota Supreme Court was persuaded by those authorities and recognized a duty to disclose that is actionable as a breach of fiduciary duty when it causes the client to lose the right to sue for legal malpractice. *Robinson-Podoll v. Harmelink, Fox & Ravnsborg Law Office*, 939 N.W.2d 32, 48 (S.D. 2020). The majority, however, chooses a

different path. (If you fully appreciate the circuit court order that *Rice* affirmed, then that case may also be read to support the proposition that a lawyer's failure to speak up on legal malpractice cannot support a breach-of-fiduciary-duty claim.)

A lawyer's duty to speak on a material issue that affects a client's interests is inherent in the attorney-client relationship. As it stands, *Rice* foreclosed the ability of a former personal-injury client—turned malpractice plaintiff—to determine, at a minimum, the timeliness of a malpractice claim under the discovery rule by demonstrating fraudulent concealment through the lawyer's failure to speak. The majority opinion missteps by applying *Rice* because it reinvigorates a misguided categorical rule in the law of fraud, pleading, and attorney-client relations. The time to issue a course correction is now given the record before us, one that easily supports a reversal for the reasons Nichols has argued.

As Justice Cardozo observed, "[A fiduciary] is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928). Does the majority's opinion exact this standard from Arkansawyers?

Given this case's facts (as pleaded and presumed true), a reasonable attorney would have known—when 120 days had passed after the complaint was filed and having made no service on any defendant, and no extension of the time to serve them was on record—that the cause was procedurally hopeless. As pleaded in the amended complaint, Nichols's attorneys slow-played the litigation, with fitful attempts to serve new defendants, for nearly three years. Nichols says they never disclosed the lapse of the 120-days service window and confessed to committing malpractice in a later (and necessarily harmless) act.

9

A plaintiff like Nichols will always have to plead certain allegations in good faith, ones that can and should be challenged when illegitimate ones are raised. Discovery and summary-judgment motions are always available to test a complaint's allegations in general, and fraudulent-concealment allegations specifically, before a trial ensues. Remember, too, that fraudulent concealment is usually a fact question, *Adams v. Arthur*, 333 Ark. 53, 63, 969 S.W.2d 598, 603 (1998), so even if a case goes to a jury, a special interrogatory related to fraudulent concealment can be presented to the jury to answer. A "no" on a concealment-related interrogatory at trial could permit a limitations argument to win late in the day, if not earlier, say on summary judgment after discovery has been permitted to a reasonable degree.

The sole concern here is whether Nichols' robust and well-pled narrative in her amended complaint that former attorneys fraudulently concealed malpractice by prolonging hopeless proceedings should be dismissed at a point when all her allegations are *presumed true*—and we otherwise have the record that we do. Until and unless the Arkansas Supreme Court speaks directly on the issue and forecloses the position for which Nichols argues, I would hold that enough was pled to defeat the Rule 12(b)(6) motion to dismiss that Messrs. Swindoll and Gibson filed, and that sufficient principles and sources of law support reversing the circuit court's order of dismissal. Consequently, the circuit court erred when it dismissed the amended complaint.

II.

The standard of review: What is it? What should it be? It is a point worth taking up; the parties cannot agree on what it is, and neither can this court.[1] The answer is that a de novo review is warranted. It is a mistake to use the abuse-of-discretion standard in a case like this.

To invoke Justice Cardozo a second time, law in the air will not do, meaning every legal analysis applies the law to some set of facts. Rule 12(b)(6), the defense that a claim "fails to state facts upon which relief can be granted," is the Arkansas Rules of Civil Procedure's equivalent to the common-law general demurrer.[2] It has not changed since Blackstone described it as a feature of English civil procedure in 1768: "An issue upon matter of law is called a demurrer: and it confesses the facts to be true, as stated by the opposite party; but denies that, by the law arising upon those facts, any injury is done to the plaintiff." 3 William Blackstone, *Commentaries* ⋆314. In other words, a Rule 12(b)(6) motion says to the court, "We can stop this lawsuit now, because even if the plaintiff

---

[1]As the majority observes, Nichols argued in her point on appeal that the circuit court abused its discretion in granting the motion to dismiss. Majority Supp. Op., at 2. But she also noted the process of review was the same "whether it is called 'a de novo' or 'an abuse of discretion' review." Appt's Br. at 16; *see also* Appt's Br. at 42. More importantly, even when both parties urge the court to depart from the correct analysis on appeal, the court should not do so. *See Ark. Contractors Licensing Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 328, 64 S.W.3d 241, 246 (2001) (ignoring parties' arguments about the circuit court's decision, which were "completely incorrect" given that the court's review was "to the Board's decision rather than the circuit court's decision").

[2]*Files v. Hill*, 268 Ark. 106, 111 n.1, 594 S.W.2d 836, 839 n.1 (1980) ("Under the Rules of Civil Procedure, effective July 1, 1979, demurrers were abolished but questions theretofore reached by general demurrer may be raised by motion. *See* Rule 12(b)(6).").

proved everything she alleges in the complaint, she has no remedy under our substantive law."

Every state has a procedural equivalent to the general demurrer. (See appendix.) The process of review on appeal is essentially the same everywhere: the facts pleaded are assumed true and construed in the pleader's favor, and the appellate court decides—with no deference to the trial court's conclusion—whether they state a claim under the law. That was, and should still be, how we review dismissals under Rule 12(b)(6) in Arkansas. *E.g.*, *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002) (de novo review when determining whether the circuit court erred by granting a Rule 12(b)(6) motion on a question of law).

As best I can tell, (1) until 2010, review of a general demurrer had always been understood, by everyone everywhere, to be de novo; and (2) it is still understood that way everywhere else. Every federal court of appeals reviews a Rule 12(b)(6) dismissal de novo. Although not every state's appellate courts use the words "de novo," they all apply the same analysis the trial court used, to the same pleaded facts it reviewed, giving no deference to the trial court's conclusion whether they state a claim under law. (See appendix.)[3]

---

[3]The majority states that this point was "vigorously researched for the appellant." Majority Supp. Op., at 2. I concede Nichols could not compel the court to survey the American law merely by identifying a discrepancy in the standards of review. But the supreme court has not explained how to conduct a discretionary review of a circuit court's conclusion that relief cannot be granted on stated facts. As the appendix reflects, I could find no guidance elsewhere.

How did we come to this now-confused space?[4] In 2010, the supreme court decided *Doe v. Weiss*, 2010 Ark. 150. The important facts were that (1) the appellants were not lawfully present in the U.S.; (2) Doe was not their real name; and (3) the person they sued argued that their complaint "should be dismissed pursuant to 12(b)(6) of the Arkansas Rules of Civil Procedure because they failed to prosecute the action in the name of the real parties in interest as required by Ark. R. Civ. P. 17(a) and failed to include their names in the pleadings as required by Ark. R. Civ. P. 8(a) and 10(a)." *Id.* at 2. The circuit court ordered the would-be plaintiffs to replead in their real names. The circuit court dismissed—under Rule 12(b)(6)—when they refused. The Does appealed.

The supreme court noted that federal courts applied an abuse-of-discretion standard when deciding whether to allow parties to use pseudonyms. Separately, it suggested that "[o]ur standard of review for the granting of a motion to dismiss is whether the circuit court abused its discretion." *Id.* at 3. Even in *Doe*'s procedural setting, that statement is curious. The embedded case cited in *Doe* was *Arkansas Department of Environmental Quality v. Oil Producers of Arkansas*, 2009 Ark. 297, 318 S.W.3d 570. That case involved an order

---

[4]The following standard-of-review excerpt is from *Handling Appeals in Arkansas* 9–23 (Arkansas Bar Association) (Rev. 2022):

> The standard of review for a circuit court's decision to grant or deny a 12(b)(6) motion on the legal sufficiency of a complaint is de novo because the question is a legal one. *Faulkner*, 347 Ark. 941, 69 S.W.3d 393 (2002) (conducting a de novo review when determining whether the circuit court erred by granting a Rule 12(b)(6) motion on a question of law). Or is it? The cases conflict on the standard of review to be applied when reviewing the dismissal of a complaint pursuant to ARCP 12(b)(6). Specifically, both the "abuse of discretion" and "de novo" standards have appeared in opinions addressing Rule 12(b)(6) dismissals. *Compare Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, 372 S.W.3d 324 (abuse of discretion) *with Faulkner, supra* (de novo).

*denying* sovereign-immunity dismissal where the plaintiff "assert[ed] that it pled sufficient facts in its amended complaint to meet two recognized exceptions," *id.* at 4, 318 S.W.3d at 572, including the exception for ultra vires acts. The order *denying* a motion to dismiss was not a final determination of liability or immunity, not even on the pleaded facts: "Whether OPA will prevail on this claim remains to be seen. In any case, it is clear to this court that the issue of ADEQ's legal authority to act as it did needs further development before the circuit court." *Id.* at 11, 318 S.W.3d at 575.

Although the supreme court affirmed the dismissal in *Doe* under Rule 12(b)(6), the decision had nothing to do with the substance of the complaint—whether, under the test Rule 12(b)(6) sets out, the complaint "fail[ed] to state facts upon which relief can be granted." Rule 12(b)(6) was just a vehicle for handling defects in form under rules that did not specify a penalty for noncompliance.

Because *Doe* arguably endorsed the use of Rule 12(b)(6) to dismiss for violating other rules of civil procedure, it might have set up a sensible distinction in the standards of review for dismissals under that rule: if dismissal is for legal insufficiency of the facts material to the asserted claim, review is de novo. If dismissal is for some discretionary determination under another rule, review is for abuse of that discretion.

The law has not, however, developed that way. In a cascade of opinions beginning with *Doe*, both this court and the supreme court have unfortunately repeated that review of a dismissal for "failure to state facts upon which relief can be granted" is for abuse of discretion, without identifying what discretion the circuit court could have employed. (Discretion to apply the law of Arkansas? Discretion to dismiss though relief can be

14

granted?) Like other questions we review de novo and answer from the same pleaded facts—whether there is personal jurisdiction, for example[5]—whether relief *can* be granted is a question of law that can be answered only one of two ways: yes or no.

This is not an academic's question. Uniformity across Arkansas's circuit courts and therefore a more equal treatment under law is at stake, especially if a case comes to the appellate level. Standards of review matter. If they did not, then we would have one instead of many. Every claim, no matter how valuable or important, can, in theory, be conclusively resolved by a Rule 12(b)(6) motion.

If the circuit courts have discretion to answer either yes or no on questions of law, and if we review such decisions using an abuse-of-discretion standard, then we can have no settled law. When we hold, on de novo review, that a circuit court does not err by dismissing a claim alleging *X*, this court also communicates that another circuit court would err by either denying a motion to dismiss that claim, or by granting relief if *X* were proved at trial. When we hold that a circuit court did not "abuse its discretion" to dismiss a claim alleging *X*, we do not come close to settling the question, even for identically situated parties in the next case in the same court, much less different courts sitting in 75 counties. This is a prime reason why we should not defer to a circuit court's Rule 12(b)(6) dismissal like the one in this case. Here, the circuit court and the majority have decided, for all practical purposes, that under the law related to pleadings, fraud, statutes of limitation, and legal-malpractice claims, a lawyer has no duty to speak to a client and

---

[5]*Lawson v. Simmons Sporting Goods, Inc.*, 2019 Ark. 84, at 5, 569 S.W.3d 865, 869.

therefore can never fraudulently conceal a potential malpractice claim—so long as the lawyer stays mum.

★ ★ ★

Whichever standard of review applies, the majority opinion does not appreciate the gross imbalance of knowledge and therefore power in the attorney-client relationship or the consequences that flow from it. Because I cannot agree with the majority opinion's reasoning or the result reached, I respectfully dissent.

HIXSON, J., concurs.

## APPENDIX

### I. *Federal Cases*

"[I]t is axiomatic that '[w]e give *de novo* review to a Rule 12(b)(6) [failure to state a claim] dismissal, using the same criteria as the district judge.'"

*Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020)

"We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6)[.]"

*Alix v. McKinsey & Co.*, 23 F.4th 196, 202 (2d Cir. 2022)

"We review the grant of a motion to dismiss de novo."

*Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022)

"We review de novo the district court's dismissal of the complaint under Rule 12(b)(6)."

*Uncork & Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926, 930 (4th Cir. 2022)

"This court reviews a grant of a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)] de novo."

*Huynh v. Walmart Inc.*, 30 F.4th 448, 453 (5th Cir. 2022)

"We review 'de novo a district court's dismissal of a complaint for failure to state a claim.'"

*Doe v. Mich. State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021)

"We review de novo the grant of a motion to dismiss for failure to state a claim."

*E. Coast Entm't of Durham, LLC v. Houston Cas. Co.*, 31 F.4th 547, 550 (7th Cir. 2022)

"We review the grant of a motion to dismiss de novo."

*Hartman v. Bowles*, 39 F.4th 544, 545 (8th Cir. 2022) (quoting authority)

"We review de novo an order granting a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."

*Fort v. Washington*, 41 F.4th 1141, 1144 (9th Cir. 2022)

"We review de novo the dismissal of a complaint under Rule 12(b)(6)."

*Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1234 (10th Cir. 2020)

"We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim[.]"

*Pincus v. Am. Traffic Sols., Inc.*, 986 F.3d 1305, 1310 (11th Cir. 2021)

"The court reviews *de novo* the dismissal of a complaint for failure to state a claim."

*IMAPizza, LLC v. At Pizza Ltd.*, 965 F.3d 871, 875 (D.C. Cir. 2020)

## II. *State Courts and the District of Columbia*

"The parties agree that the appropriate standard of review in this case is the standard applicable to the granting of a motion to dismiss under Rule 12(b)(6), Ala. R. Civ. P. We review such dismissals de novo."

*Hendrix v. United Healthcare Ins. Co. of the River Valley*, 327 So. 3d 191, 196 (Ala. 2020)

"We review de novo decisions granting motions to dismiss."

*DeRemer v. Turnbull*, 453 P.3d 193, 196 (Alaska 2019)

"We review de novo the dismissal of a complaint pursuant to Rule 12(b)(6)[.]"

*Shepherd v. Costco Wholesale Corp.*, 482 P.3d 390, 392 (Ariz. 2021)

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory."

*Mathews v. Becerra*, 455 P.3d 277, 285 (Cal. 2019)

"We review de novo a district court's decision on a C.R.C.P. 12(b)(5) motion to dismiss [for failure to state a claim upon which relief can be granted]."

*People ex rel. Rein v. Meagher*, 465 P.3d 554, 558 (Colo. 2020)

"Appellate review of a trial court's decision to grant a motion to strike is plenary. This is because 'a motion to strike challenges the legal sufficiency of a pleading . . . and, consequently, requires no factual findings by the trial court[.]'"

*U.S. Bank Nat'l Ass'n v. Blowers*, 212 A.3d 226, 234 (Conn. 2019) (cleaned up)

"The only issue on review of a dismissal made pursuant to Rule 12(b)(6) is the legal sufficiency of the complaint. As a motion to dismiss a complaint presents questions of law, our standard of review is de novo."

*Scott v. FedChoice Fed. Credit Union*, 274 A.3d 318, 322 (D.C. 2022) (cleaned up)

"We review the Superior Court's grant of a motion to dismiss under a *de novo* standard of review and apply the same standard as the trial court."

*Page v. Oath Inc.*, 270 A.3d 833, 842 (Del. 2022)

"A trial court's ruling on a motion to dismiss is subject to de novo review."

*Palm Beach Cnty. Sch. Bd. v. Doe*, 210 So. 3d 41, 43 (Fla. 2017)

| | |
|---|---|
| "The appellate court 'review[s] de novo the trial court's ruling on the [defendants'] motion to dismiss, accepting as true all well-pled material allegations in the complaint and resolving any doubts in favor of [the plaintiff].'" | *Love v. Fulton Cnty. Bd. of Tax Assessors*, 859 S.E.2d 33, 36 (Ga. 2021) |
| "A circuit court order granting a motion to dismiss [for failure to state a claim] is reviewed <u>de novo</u>." | *Flores v. Logan*, 513 P.3d 423, 432 (Haw. 2022) |
| "This Court freely reviews Rule 12(b)(6) dismissals." | *Munden v. Bannock Cnty.*, 504 P.3d 354, 363 (Idaho 2022) (citing *Paslay v. A&B Irrigation Dist.*, 406 P.3d 878, 880 (Idaho 2017) ("This Court reviews de novo both Rule 12(b)(6) dismissal orders and Rule 56 summary judgment grants.")) |
| "A section 2-615 or section 2-619 motion to dismiss admits as true all well-pleaded facts and all reasonable inferences from those facts. . . . Our review of a dismissal under either section is de novo." | *Cahokia Unit Sch. Dist. No. 187 v. Pritzker*, 184 N.E.3d 233, 240 (Ill. 2021) (citations omitted) |
| "We review 'a 12(B)(6) dismissal de novo, giving no deference to the trial court's decision.'" | *Collins Asset Grp., LLC v. Alialy*, 139 N.E.3d 712, 714 (Ind. 2020) |
| "On a motion to dismiss, we review for corrections of errors at law, unless the motion to dismiss is on a constitutional issue, in which case our review is de novo." | *Weizberg v. City of Des Moines*, 923 N.W.2d 200, 211 (Iowa 2018)[6] |
| "An appellate court reviews de novo whether a petition states a valid claim for relief." | *Kudlacik v. Johnny's Shawnee, Inc.*, 440 P.3d 576, 579 (Kan. 2019) |

---

[6]I interpret that "correction of errors at law" is de novo review, but only of the errors the parties have assigned, whereas "de novo" review allows review of errors the parties have not identified. *See Goodsell v. State Auto. & Cas. Underwriters*, 153 N.W.2d 458, 459 (Iowa 1967) ("This is a law action and we are limited to considering the errors assigned on appeal.").

"The motion [under CR 12.02(f) to dismiss for failure to state a claim] presents 'a pure question of law' and our review is de novo."

*Lee v. Ky. Dep't of Corr.*, 610 S.W.3d 254, 257 (Ky. 2020)

"An exception of no cause of action questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition. The exception is triable on the face of the petition and each well-pleaded fact in the petition must be accepted as true. Appellate review is *de novo*. Because the exception raises a question of law based solely on the sufficiency of the petition, an exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff cannot prove any set of facts which would entitle him to relief."

*Kendrick v. Est. of Barre*, 339 So. 3d 615, 617 (La. 2021) (citation omitted)

"We now turn to address whether the trial court erred when it dismissed Anctil's complaint based on its conclusion that Anctil had failed to state a claim upon which relief could be granted. See M.R. Civ. P. 12(b)(6). We review the legal sufficiency of the complaint de novo[.]"

*Anctil v. Cassese*, 232 A.3d 245, 250 (Me. 2020)

"A defendant may seek dismissal of a complaint under Maryland Rule 2-322(b)(2) if the complaint 'fail[s] to state a claim upon which relief can be granted.' Whether a motion to dismiss was properly granted or not by a trial court is a question of law we review *de novo*, with no deference given to the trial court."

*Chavis v. Blibaum & Assocs., P.A.*, 264 A.3d 1254, 1263 (Md. 2021)

"We review the allowance of a motion to dismiss de novo[.]"

*Bostwick v. 44 Chestnut St., Wakefield, Mass.*, 176 N.E.3d 622, 625 (Mass. 2021)

"A motion [for summary disposition] under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint. . . . We review de novo a trial court's decision on a motion for summary disposition."

*Esurance Prop. & Cas. Ins. Co. v. Mich. Assigned Claims Plan*, 968 N.W.2d 482, 487–88 (Mich. 2021) (cleaned up)

"We review de novo dismissals under Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief can be granted."

*Poitra v. Short*, 966 N.W.2d 819, 822 (Minn. 2021)

"[A] motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure raises an issue of law, which is reviewed under a *de novo* standard."

*Moses v. Rankin Cnty.*, 285 So. 3d 620, 623 (Miss. 2019) (cleaned up)

"The circuit court's decision to sustain a motion to dismiss [for failure to state a claim upon which relief can be granted] is reviewed de novo."

*Schlafly v. Cori*, 647 S.W.3d 570, 573 (Mo. 2022) (en banc)

"We review de novo an order granting a motion to dismiss under M. R. Civ. P. 12(b)(6)."

*Barthel v. Barretts Minerals, Inc.*, 496 P.3d 541, 543 (Mont. 2021)

"A district court's grant of a motion to dismiss for failure to state a claim under Neb. Ct. R. Pldg. § 6-1112(b)(6) is reviewed de novo[.]"

*Benjamin M. v. Jeri S.*, 950 N.W.2d 381, 386 (Neb. 2020)

"We review a dismissal for failure to state a claim pursuant to NRCP 12(b)(5) de novo."

*Wilson v. Las Vegas Metro. Police Dep't*, 498 P.3d 1278, 1280 (Nev. 2021)

"We apply our traditional standard of review for motions to dismiss to the legal issues presented. Specifically, we review issues of law de novo."

*Avery v. Comm'r, New Hampshire Dep't of Corr.*, 248 A.3d 1179, 1183 (N.H. 2020)

"Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo."

*Baskin v. P.C. Richard & Son, LLC*, 249 A.3d 461, 469 (N.J. 2021)

"We review de novo a district court's order granting or denying a motion to dismiss under Rule 1-012(B)(6) NMRA for the failure to state a legally viable claim."

*Nash v. Bd. of Cnty. Comm'rs of Catron Cnty.*, 480 P.3d 842, 847 (N.M. 2021) (quotation omitted)

| | |
|---|---|
| "When reviewing a pre-answer motion to dismiss the complaint for failure to state a cause of action, we must give the pleadings a liberal construction, accept the allegations as true and accord the plaintiff every possible favorable inference. Giving plaintiff the benefit of all favorable inferences which may be drawn from the pleading, this Court determines only whether the alleged facts fit within any cognizable legal theory." | *Sassi v. Mobile Life Support Servs., Inc.,* 175 N.E.3d 1246, 1248 (N.Y. 2021) (cleaned up)[7] |
| "This Court reviews a trial court's order on a motion to dismiss de novo[.]" | *Cheryl Lloyd Humphrey Land Inv. Co., LLC v. Resco Prod., Inc.,* 858 S.E.2d 795, 798 (N.C. 2021) |
| "We review a district court's decision granting a motion to dismiss under N.D.R.Civ.P. 12(b)(6) de novo on appeal." | *Schmitz v. N.D. State Bd. of Chiropractic Exam'rs,* 958 N.W.2d 496, 498 (N.D. 2021) (quoting *Krile v. Lawyer,* 947 N.W.2d 366, 373 (N.D. 2020) (cleaned up)) |
| "We review de novo a decision granting a motion to dismiss under Civ. R. 12(B)(6)." | *State ex rel. Sands v. Coulson,* 169 N.E.3d 663, 665 (Ohio 2021) |
| "This Court's review of a dismissal for failure to state a claim is conducted *de novo.*" | *Hobson v. Cimarex Energy Co.,* 453 P.3d 482, 483 (Okla. 2019) |

---

[7]The standard of review appears to be determined by how the New York appellate courts are structured. Ordinarily, any questions involving factual findings or discretion are decided by the appellate division, and the court of appeals can review only questions of law, including the legal question of whether an exercise of discretion was an abuse of discretion. In the appellate division opinion from which the court of appeals granted review here, the court simply "agree[d] with the Supreme Court's determination to grant the defendant's motion pursuant to CPLR 3211(a)(7) to dismiss the complaint." *Sassi v. Mobile Life Support Servs., Inc.,* 176 A.D.3d 886 (N.Y. App. Div. 2019), *rev'd,* 175 N.E.3d 1246 (N.Y. 2021).

| | |
|---|---|
| "We review for legal error the trial court's grant of an ORCP 21 A(8) motion. In conducting our review, 'we accept as true the allegations in the complaint, and any reasonable inferences that can be drawn from those allegations, viewing them in the light most favorable to the nonmoving party[.]'" | *Hernandez v. Cath. Health Initiatives*, 490 P.3d 166, 168 (Ore. 2021) |
| "Where the appeal arises from an order sustaining preliminary objections due to legal insufficiency of the complaint, our well-settled standard of review is *de novo*." | *Harrison v. Health Network Labs. Ltd. P'ships*, 232 A.3d 674, 678 (Pa. 2020) |
| "When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, 'this Court applies the same standard as the hearing justice[.]'" | *Nerney v. Town of Smithfield*, 269 A.3d 753, 756 (R.I. 2022) |
| "Rule 12(b)(6) permits a party to assert by motion the defense that a claim 'fail[s] to state facts sufficient to constitute a cause of action.' . . . We review the decisions of both [the circuit court and the court of appeals] using the same standard they used." | *Beverly v. Grand Strand Reg'l Med. Ctr., LLC*, 869 S.E.2d 812, 815 (S.C. 2022) |
| "Motions to dismiss under SDCL 15-6-12(b)(5) . . . test the legal sufficiency of the plaintiff's claim and necessarily implicate questions of law. For this reason, we also review de novo a circuit court's determination of a Rule 12(b)(5) motion to dismiss." | *Rhines v. S.D. Dep't of Corr.*, 935 N.W.2d 541, 544 (S.D. 2019) (citation omitted) |
| "Our review of the trial court's decision [on a motion to dismiss under Rule 12.02(6)] involves a question of law and is de novo." | *Cooper v. Mandy*, 639 S.W.3d 29, 33 (Tenn. 2022) |

"Under Rule 91a, a party may move for dismissal on the ground that a cause of action has no basis in law. . . . We review the merits of a Rule 91a ruling de novo; whether a defendant is entitled to dismissal under the facts alleged is a legal question."

*In re Farmers Texas Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021)[8]

"A motion to dismiss presents a question of law that is reviewed de novo, giving 'no deference' to the district court's analysis."

*Rawcliffe v. Anciaux*, 416 P.3d 362, 367 (Utah 2017)

"We review motions to dismiss de novo and 'will uphold a motion to dismiss for failure to state a claim only if it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief.'"

*Rodrigue v. Illuzzi*, 278 A.3d 980, 991 (Vt. 2022) (cleaned up)

"A trial court's decision sustaining a demurrer presents a question of law which we review de novo."

*Young-Allen v. Bank of Am., N.A.*, 839 S.E.2d 897, 900 (Va. 2020)

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*[.]"

*Haught v. Fletcher*, 874 S.E.2d 27, 31 (W. Va. 2022)

"We treat a CR 12(c) motion for judgment on the pleadings identically to a CR 12(b)(6) motion to dismiss for failure to state a claim . . . We review the superior court's judgment on the pleadings de novo."

*Freedom Found. v. Teamsters Local 117 Segregated Fund*, 480 P.3d 1119, 1131 (Wash. 2021)

"We review de novo the circuit court's dismissal of a complaint for failure to state a claim."

*State ex rel. Kaul v. Prehn*, 976 N.W.2d 821, 824–25 (Wis. 2022)

---

[8]Like our supreme court in *Doe*, the court reviews a denial of a motion to dismiss for abuse of discretion: "Mandamus relief is appropriate when the trial court abuses its discretion in denying a Rule 91a motion to dismiss." *Id.* (citing *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (holding mandamus relief was appropriate where the trial court had erroneously denied motion to dismiss a declaratory judgment action to "spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings")).

"We review orders granting a motion to dismiss under Rule 12(b)(6) de novo." *Moses Inc. v. Moses*, 509 P.3d 345, 349 (Wyo. 2022) (quoting *Dockter v. Lozano*, 472 P.3d 362, 364 (Wyo. 2020))